STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO: RE-10-513
JAW - CuM - 7/18/2012

WELLS FARGO BANK, N.A.

Plaintiff,

v.

KENNETH BUREK and SHELLEY
BUREK

Defendant,

and

KEY BANK, NA, TD BANKNORTH,
NA, and STATE OF MAINE,
REVENUE SERVICES

Parties-in-interest,



STATE OF MAINE
Cumberland ss. Clerk's Office

JUL 1 8 2012

RECEIVED

## DECISION AND ORDER

This action for foreclosure and sale, brought pursuant to 14 M.R.S.A. § 6321,

came before the court for a bench trial on April 4, 2012. Prior to trial, the Defendants,

Kenneth and Shelley Burek, made a written motion for a directed verdict. The court

granted the Plaintiff, Wells Fargo Bank NA, the opportunity to respond to the motion

post-trial and granted the Defendant the opportunity to reply to the Plaintiff's

opposition. Both parties have submitted these filings. No parties-in-interest

participated in the trial.

Plaintiff's exhibits A1, B, C1, C2, D1, D2, G, and H and Defendants' exhibit 1

were admitted into evidence. Plaintiff's exhibits A, A2, E, I, J, K, L, and M were offered

and the Defendants objected to all but exhibit J. Ruling was reserved on these exhibits.[1]

---

[1] As noted below, exhibits A, A2, I, J, and L are admitted but exhibits E and M are not admitted.

1

Based on the testimony at trial and the Plaintiff's exhibits, as discussed below, the court finds that the Plaintiff is entitled to a judgment of foreclosure and sale in its favor.

Ownership of the Note

Defendant, Kenneth J. Burek, made a promissory note in favor of Union Federal Bank of Indianapolis on October 7, 2004 in the principal amount of $324,000.00 (the "Note"). (Exhibit A.) On November 27, 2009, Defendants Kenneth J. Burek and Shelley M. Burek entered into a Loan Modification Agreement with Wells Fargo Bank, NA dba America's Servicing Company that changes the interest rate and payment terms of the Note, including bringing the amount due to zero as of January 1, 2010 (the "LMA").

Also, on October 7, 2004, Defendants Kenneth J. Burek and Shelley M. Burek granted a mortgage security interest on their property at 3 Quail Ridge Drive, Gorham, Maine 04038, more particularly described in Exhibit A to the mortgage, to Union Federal Bank of Indianapolis to secure the payment obligation created by the Note (the "Mortgage"). (Exhibit B.) The Mortgage was recorded in the Cumberland County Registry of Deeds at Book 21897, Page 285. Union Federal Bank of Indianapolis assigned the Mortgage, "together with the note(s) and obligations therein described" to Mortgage Electronic Registration Systems, Inc. on October 18, 2005; said assignment was recorded in the Cumberland County Registry of Deeds at Book 23962, Page 165. (Exhibit C-1.) On February 10, 2009, Mortgage Electronic Registration Systems, Inc. assigned the Mortgage and the Note to Wells Fargo Bank, NA dba America's Servicing Company; said assignment was recorded in the Cumberland County Registry of Deeds at Book 26794, Page 105. (Exhibit C-2.)

The Defendants argued that the Plaintiff has failed to "certify proof of ownership of the mortgage note" as required by 14 M.R.S. § 6321 and *Chase Home Finance v.*

2

*Higgins*, 2009 ME 136, ¶ 11, 985 A.2d 508, because the Federal National Mortgage Association ("Fannie Mae") is the owner of the Note.[2] This argument is based on a distinction between a "holder" and "owner" of a promissory note under Articles 3-A and 9-A of the Maine Commercial Code ("MCC"). The Plaintiff asserts that it is both the holder and owner of the Note through the endorsement in the "first allonge."[3]

The foreclosure statute, 14 M.R.S. §§ 6101-6325 and the case law interpreting that statute do not require the plaintiff to be the "owner" of the mortgage note as that term is used in Article 9-A of the MCC. The two cases that both parties rely on, while not stating the proposition expressly, each acknowledge that "ownership of the note" may be established by proving that the plaintiff is entitled to enforce the note. *See Wells Fargo Bank, NA v. deBree*, 2012 ME 34, ¶¶ 4, 8, 38 A.3d 1257; *JPMorgan Chase Bank v. Harp*, 2011 ME 5, ¶ 9, n.3, 10 A.3d 718.[4] The Law Court has been clear in stating that "the mortgagee" has standing to bring a foreclosure action and that "the mortgagee is a party entitled to enforce the debt obligation that is secured by a mortgage." *Mortgage Electronic Registration Systems, Inc. v. Saunders*, 2010 ME 79, ¶ 11, 2 A.3d 289; *see also* 14

---

[2] The Defendants argue that Fannie Mae is the owner of the Note and point to the fact that Note and Mortgage are made on "Fannie Mae/Freddie Mac Uniform Instruments" and that the LMA references both a "Loan No." and a "Fannie Mae Loan No." The Defendants also ask the court to take judicial notice of a website operated by Fannie Mae (www.fanniemae.com/loanlookup/) that allows a user to enter an address to which the website responds with a statement as to whether Fannie Mae owns a loan on the property. The court declines to take judicial notice of the facts generated by entering this search inquiry on this website. This is not the kind of fact subject to judicial notice under Rule 201(b) of the Maine Rules of Evidence and the information generated was not authenticated and is hearsay.

[3] The Plaintiff states, "When the note is transferred and endorsed, it is 'negotiated', [sic] which changes ownership." (Pl. Opp. 10 (citing 11 M.R.S. § 3-1201(1)).) The Plaintiff's interpretation of this portion of the MCC is incorrect. This section does not discuss or reference ownership; it discusses transfer of possession and status of holder.

[4] Other cases reflect the same contention. In *Chase Home Finance LLC v. Higgins*, 2009 ME 136, 985 A.2d 508, the only statement the Law Court makes regarding the note is "Chase also asserts that it holds the promissory note." *Id.* at ¶ 2. There is no discussion of ownership as a concept distinct from the right to enforce the note. *See also HSBC Bank USA N.A. v. Gabay*, 2011 ME 101 ¶¶ 14-15, 28 A.3d 1158 (mentioning ownership but focusing on deficiencies in HSBC's showing that it was "the current holder of the note").

3

M.R.S. § 6321 ("the mortgagee or any person claiming under the mortgagee may proceed for the purpose of foreclosure by a civil action").

Thus, there is no indication in statute or the case law that an entity who is entitled to enforce a promissory note under 11 M.R.S. § 3-1301 is precluded from bringing an action to foreclose a defendant's right of redemption under a mortgage security instrument even if the note is "owned" by another entity. The Defendants' argument as to the ownership requirement is unavailing.[5]

The Right to Enforce

The Plaintiff argues that it has the right to enforce the Note because the Note was negotiated by First Union Bank of Indianapolis, making the Plaintiff the holder of the Note. The Plaintiff points to two allonges purporting to contain endorsements of the Note. Under the MCC, section 3-1204, "[f]or the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument." 11 M.R.S. § 3-1204(1). "'Affix' in its literal meaning is 'to attach physically.'" *Big Builders, Inc. v. Israel*, 709 A.2d 74 (D.C. Cir. 1998) (quoting Webster' Third New International Dictionary 36 (1971)). Other courts have held that stapling is the modern equivalent of pasting or gluing and is sufficient to affix two papers. *Lamson v. Commercial Credit Corp.*, 531 P.2d 966, 968 (Colo. 1979). The Texas Supreme Court has held that removing a staple for the purpose of photocopying does not create a fact issue for a jury as to whether or not the papers were affixed. *S.W. Resolution Corp. v. Watson*, 964 S.W.2d 262 (Tex. 1997) (the allonge presented to the court was stapled, taped, and

---

[5] The Defendants also argue that as a matter of contract, only an "owner of the Note" may bring a foreclosure on the security instrument. They point to the definition of "Lender" in the Mortgage, which states that the term "may include any Person who takes ownership of the Note and this Security Instrument." (Ex. B at 2.) The Defendants have not put forward any reason for the court to interpret the terms used in the mortgage in the same way as the MCC uses those terms. As discussed below, the Plaintiff does take ownership of the rights in the Mortgage and Note through the assignments in exhibits C1 and C2; this is sufficient to allow the Plaintiff to enforce the Note and the Security Instrument.

4

clipped to the note after it had been photocopied). In contrast, where an allonge was never physically attached to the note, it cannot be an endorsement even when kept in close proximity to the note. *See Town of Freeport v. Ring*, 1999 ME 47, ¶ 10, 727 A.2d 901 (holding that an unattached paper sent in the same envelope with a check was not an endorsement of the check because it was not attached).

This technical requirement embodies several policy goals. First, proper negotiation of a negotiable instrument gives the receiving party the advantageous status as a "holder in due course" and compliance with the technicalities of the statute is a prerequisite to gaining this status. *Adams v. Madison Realty & Dev., Inc.*, 853 F.2d 163, 166 (3rd Cir. 1988). Second, affixation is important for "preserving a traceable chain of title"; that is, the instrument "should carry within [it] indicia by which ownership is to be determined," if not, the value of the system of negotiation would be significantly reduced. *Id.* at 167 (internal quotations omitted).

The Plaintiff here offered a copy of the Note and two allonges as exhibit A. The Defendants objected on the grounds that the allonges were not affixed and, thus, the purported endorsements are not part of the negotiable instrument. The Plaintiff then produced its "custodial file," marked as exhibit A2, to the court so that the court could examine the Note and determine if the allonges are affixed. The Plaintiff argued that by virtue of being kept together in the same file, the documents are affixed.

Upon examination of the documents in Exhibit A-2, the court notes that the Note and two allonges are paper-clipped, not stapled, together. Thus, the allonges are not currently "affixed." Additionally, the allonges do not appear to have ever been affixed to the Note. The second allonge, endorsed in blank by Wells Fargo Bank, N.A. dba Americas Servicing Company, does not have any indicia of stapling, gluing, or pasting. The first allonge, purporting to be an endorsement from Huntington National Bank to

5

Wells Fargo Bank, NA dba Americas Servicing Company, is marked with two sets of staple holes. The Note itself only shows one staple mark. Therefore, it does not appear that any allonge was ever affixed to the Note. Additionally, the staple holes on the first allonge do not match the location of the staple holes on the Note. Thus, the Plaintiff has also not proven that it is the "holder" of the Note by endorsement.

Even had the "first allonge" been affixed to the Note, the Plaintiff did not offer admissible evidence that the endorsing party had the authority to endorse the Note. The purported endorsement on the "first allonge" is given by "Huntington National Bank sbmt Sky Bank sbmt Union Federal Bank of Indianapolis." (Exhibit A.) The Plaintiff offers Exhibit M to prove that Union Federal Savings Bank of Indianapolis was acquired by Sky Bank and that Sky Bank was acquired by The Huntington National Bank, thus making the endorsement on the "first allonge" valid. Exhibit M is a copy of search results obtained from a website maintained by the federal government purporting to show significant events in the history of financial institutions.[6] The Defendants object to this exhibit on the grounds that it is has not been authenticated by any witness and is hearsay. The Plaintiff argued in rebuttal that the document is self-authenticating and a public record.

Exhibit M is not self-authenticating under Rule 902 of the Maine Rules of Evidence, as it does not contain any of the hallmarks of official or public documents that render a document self-authenticating. Also, the Plaintiff has not established the foundation for admissibility as a public record under Rule 803(8). Even if the "National Information Center" is such a public agency, the exhibit does not purport to provide the court with copies of the records of the agency but rather requires the user to input data to search records to which the website provides output summarizing various actions.

---

[6] The website is www.ffiec.gov/nicpubweb/nicweb/NicHome.aspx.

6

Exhibit M is not admissible to prove that the alleged endorsement was made by an authorized party.

Even though the Plaintiff has not established that it is a "holder" of the Note, it has proven that it is entitled to enforce the Note because it is a "nonholder in possession with rights of a holder." 11 M.R.S. § 3-1301(2). The Plaintiff is in possession of the original Note (as evidenced by the custodial file produced to the court at trial as Exhibit A-2) and the Plaintiff acquired the rights of First Union Bank of Indianapolis, as holder of the Note, through the assignments of the Mortgage in Exhibits C1 and C2, which by their terms also conveyed all rights in the Notes that the Mortgage secures.

The Plaintiff's witness, Adam Seeman, testified that Wells Fargo acquired the Note on November 1, 2005. At the latest, the rights of the holder were transferred with the assignment of the Mortgage on February 10, 2009. From this evidence the court finds that Wells Fargo had the authority, as a non-holder in possession, to enter into the LMA (Exhibit A-1) with the Defendants on November 27, 2009.[7] Therefore, the Plaintiff has proven that it has standing to pursue an action for foreclosure because it is entitled to enforce the debt obligation and it is entitled to the beneficial and legal rights of the mortgage.

Other Requirements of 14 M.R.S. § 6231

The Notice provided by the Plaintiff's counsel on June 8, 2010 complies with the statutory requirements of 14 M.R.S. § 6111(1-A). (Exhibit D-1.) The last attempt at delivering the Notice was made on June 25, 2010 and the Complaint was not filed until August 2, 2010, thus providing more than the requisite 35 days after "notice is given" prior to accelerating the debt.

---

[7] The Plaintiff argues that the Defendants' signatures on the LMA are acquiescence to Wells Fargo being entitled to enforce the Note. However, the Defendants do not have the power to acquiesce to a change in "holder" status if there has not been a proper negotiation of the Note.

7

The Plaintiff offers its witness's testimony and exhibits E, I, and L to prove breach of a condition of the Note and Mortgage and the amounts due. Exhibit E is a summary of information contained in the computer records of exhibits I and L and was made for the purpose of this litigation and is not a business record. The Plaintiff's witness is a qualified witness and he established the foundational elements for the business records exception to the hearsay rule for exhibits I and L. Those exhibits are admitted into evidence.[8] Those records and the witness's testimony establish that the Defendants have failed to make monthly payments beginning with the payment due February 1, 2010 which is a breach of a condition of the Mortgage. The records further reflect that the Defendants owe $308,211.21 on the Note and LMA, exclusive of attorneys' fees.

Although Defendant Shelly M. Burek did not sign the original Note, she did execute the Mortgage and the LMA. Therefore, the foreclosure judgment is based in part on her failure to keep her promises under the LMA and forecloses her right of redemption under the Mortgage.

The Plaintiff's Exhibit H demonstrates that all the parties-in-interest and the Defendants were properly served notice of the Complaint and the court's records reflect that the Foreclosure Diversion Program requirements were met by the Plaintiffs.

Exhibit J, which is admitted into evidence given that no objection was made by the Defendants, establishes the order of priority for the distribution of proceeds from the foreclosure and sale of the property.

---

[8] The Defendants advocate for requiring additional foundational elements to be established because the business records are computer based. *See In re Vargas*, 396 B.R. 511, 518 (Bankr. C.D. Cal. 2008) (citing *In re Vinhee*, 336 B.R 437, 446 (B.A.P. 9th Cir. 2005)). Even now that almost all business records are kept electronically, the Law Court has not required parties to provide any additional foundational information in order to admit these records over the hearsay rule. *See Bank of Am. v. Barr*, 2010 ME 124, 9 A.3d 816.

**The entries are:**

Having presented sufficient admissible evidence proving that it has the right to enforce the Note and the Mortgage, the Plaintiff is entitled to a judgment of foreclosure and sale in its favor on the property located at 3 Quail Ridge Drive, Gorham, Maine. The Plaintiff is also entitled to recover reasonable attorneys' fees and costs.

The Plaintiff is ORDERED to submit an affidavit of attorneys' fees and costs incurred in the prosecution of this action and proposed order within 20 days. The Plaintiff is also ORDERED to submit a revised proposed judgment. Specifically, the Plaintiff should amend the caption, the authority by which it has the right to enforce the note, the amount of attorneys' fees and costs (in accordance with the submitted affidavit), and the order of priority to reflect that party-in-interest TD Bank NA did file an Answer but not an affidavit of the debt and to reflect the actual order of priority of the parties-in-interest established in exhibit J. The court will enter judgment accordingly.

The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

DATE: 7/17/12

Joyce A. Wheeler
Justice, Superior Court

Plaintiff's Attorney-Alexander Saksen Esq

Defendants' Attorney-Thomas Cox Esq/David
  Perkins Esq

9